UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| COREY BEVINS, | Case No. 16-CV-4340 (NEB/BRT) |
| Plaintiff, | |
| v. | ORDER ON REPORT AND RECOMMENDATION |
| BECKER COUNTY, MINNESOTA; BECKER COUNTY JAIL; BECKER COUNTY SHERIFFS DEPARTMENT; UNKNOWN BECKER COUNTY SHERIFF; ST. MARY'S REGIONAL HEALTH CENTER; INNOVISE HEALTH, LLC[1]; DONALD NELSON; JOHN W. FREEMAN; PAULA PETERSON; and RANDY HODGSON, | |
| Defendants. | |

*Pro se* Plaintiff Cory Bevins brings this lawsuit against two groups of defendants: the Becker County Defendants (Becker County, Minnesota; Becker County Jail, the Becker County Sheriffs' Department, an unknown Becker County Sheriff, Donald Nelson, John W. Freeman, Paula Peterson, and Randy Hodgson), and the St. Mary's Defendants (St. Mary's Regional Health Center and Innovis Health, LLC).[2] Bevins' claims arise from the

---

[1] The correct spelling for this Defendant is Innovis Health, LLC. The docket shall be changed to reflect the correct spelling.
[2] As the R&R notes, the operative complaint in this case is Bevins' Second Amended Complaint, filed on May 8, 2017 [ECF No. 24, ECF No. 180 at 3.] The complaint is subject to two amendments in which Bevins replaced Essentia Health-St. Mary's Hospital with

1

medical treatment he received while being detained at Becker County Jail ("the Jail"). The Becker County Defendants and the St. Mary's Defendants moved for summary judgment [ECF Nos. 126, 120] and Magistrate Judge Becky R. Thorson, in a Report and Recommendation, recommended granting both motions. [ECF No. 180 ("R&R") at 2.] For the reasons stated below, the Court grants both motions.[3]

## BACKGROUND

On January 14, 2014, Becker County police arrested, transported, and booked Plaintiff Cory Bevins at Becker County Jail. [ECF No. 129-1 at 94.] The arresting officer informed the Jail staff that Bevins was a heavy drinker and may experience withdrawal symptoms. [ECF No. 129-2 at 2.] The Jail staff observed Bevins, but Bevins argues he "was never checked on or even asked if he was ok. Not once did a guard open the door or trap to ask [him] if he was ok. After the 12 hours elapsed the guard opened the door and told [him] to cuff up. He was never asked if he was ok or if he thought he needed medical attention." [ECF No. 157 at 1–2.]

---

St. Mary's Regional Health Center [ECF No. 68], corrected the spelling for the name "Randy Hodgson," and added Innovise [Innovis] Health, LLC as a defendant. [ECF No. 100.] The Court also replaced "Unknown Becker County Jail Staff Officers" with Donald Nelson, John W. Freeman, and Paula Peterson [ECF No. 52] and dismissed the claims against "Unknown Staff of Becker County Jail Medical Department" without prejudice [ECF No. 53.]

[3] Bevins also filed a request to subpoena witnesses for trial. [ECF No. 174.] This request is denied as moot because the Court is granting the Defendants' motions for summary judgment.

2

Over that 12-hour period, Bevins experienced worsening abdominal pain. [ECF No. 122-3 ("Bevins Dep.") at 38:24–39:3.] Bevins was taken to St Mary's Regional Health Center ("the Hospital") and admitted. (*Id.* at 36:20–37:20.) A doctor diagnosed him with alcoholic hepatitis and gastritis. (*Id.* at 40:10–41:2.) Bevins spent two days at the Hospital. (*Id.* at 37:05–38:01.) He was then discharged and prescribed four vitamins and an acid suppressant. [ECF No. 129-2 at 4.] The Jail filled Bevins' prescriptions the day after his discharge. (*Id.*) The Jail administers medication to inmates four times per day [ECF No. 129, ¶9] and Bevins took his medication every day for the next week, January 18, to January 25. [ECF No. 129-1 at 74–75.]

On January 20, 2014, Bevins saw Dr. Pankaj Timsina at Essentia Health, who noted his symptoms were improving. [ECF No. 122-3 at 74.]. Then, two days after his appointment, Bevins submitted a Sick Call Request Form, stating he was experiencing severe side and stomach pain. (Bevins Dep. at 62:12–63:4.) Bevins called his mother from the Jail and told her the Jail had given him ibuprofen for the pain, that the medications prescribed after his hospitalizations had run out, and that he was waiting for them to be refilled. [ECF No. 133-1 at 2–3.]

Two days later, a Jail nurse attempted to contact Dr. Timsina's office. (Bevins Dep. at 63:5–63:14.) The nurse spoke with Dr. Monica Pokharel the following day, who stated that the Jail could give Bevins one dose of Tylenol or ibuprofen if necessary and that if the pain continued, Bevins could return to the clinic. (*Id.* at 68:1–22.) Jail staff then noticed

3

Bevins had vomited in his cell. (*Id.* at 79:18–80:18.) Bevins unsuccessfully attempted to hide the vomit and Jail staff noticed there was blood in his vomit. (*Id.*) Jail staff then took Bevins back to the Hospital where he stayed for several days. (*Id.* at 69:5–70:1.)

Bevins met with Dr. Timsina for a follow-up appointment. [ECF No. 122-3 at 107.] Dr. Timsina amended Bevins' diagnosis to chronic pancreatitis and they discussed a treatment plan. (*Id.*) Bevins also met with a social worker several times at the Jail. [ECF No. 129-2 at 16–17.] He told the social worker that he was "feeling 'helpless' and 'hopeless' regarding his situation of incarceration." (*Id.* at 16.) The social worker noted that Bevins may benefit from taking antidepressants. (*Id.* at 17.) Bevins also spoke with a nurse at the jail about his mental health. (*Id.* at 18.) He told the nurse he thought he had been prescribed an antidepressant. (*Id.*) The nurse contacted Dr. Timsina, who indicated Bevins had not in fact been prescribed an antidepressant. (*Id.*)

A month later, Bevins submitted another Sick Call Request Form. (Bevins Dep. at 129:4–8.) He complained that the area above his lip was swollen and that he believed it was a spider bite. (*Id.* at 129:13–25.) A nurse at the jail found there was some "slight swelling" but no signs of infection or redness. (*Id.* at 130:13–17.) Bevins was authorized to receive ibuprofen four times a day and an ice pack for his face three times a day. (*Id.* at 130:18–23.) Jail staff then took Bevins to urgent care the following day. (*Id.* at 131:4–7.) Doctors diagnosed Bevins with cellulitis and prescribed him an antibiotic and pain medication, which Jail staff administered to him. (*Id.* at 135:4–25.) Over the next few

weeks the swelling disappeared and the cellulitis fully resolved. In April 2014, Bevins was transferred to federal custody. (*Id.* at 155:6–20.)

Bevins sued the St. Mary's and Becker County Defendants, alleging several constitutional violations under 42 U.S.C. § 1983 including: (1) deliberate indifference to medical needs; (2) a violation of procedural due process; (3) conspiracy to violate his constitutional rights, as well as a claim against Becker County for enacting unconstitutional policies, customs, and practices.[4] [ECF No. 24.] Bevins also brought state law claims for negligence and medical malpractice. *Id.* The St. Mary's Defendants and the Becker County Defendants moved for summary judgment. [ECF No. 120, 126.] In an R&R, Magistrate Judge Becky R. Thorson recommended granting the motions (R&R at 29) and Bevins submitted an Objection. [ECF No. 182 ("Bevins Obj.")].

**Analysis**

If a party objects to a magistrate judge's report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).[5] A

---

[4] Whether Bevins makes this allegation is not clear from the face of the complaint. However, the R&R states, "Plaintiff's Complaint can also be construed as alleging a claim against Becker County for enacting unconstitutional policies, customs, and practices." (R&R at 11–12.) In accepting the R&R, this Court construes the claim similarly.

[5] The Defendants argue the Bevins' Objection to the R&R was untimely because it was served and filed four days after the November 16, 2018 deadline [ECF No. 183 at 2–3, ECF No. 185 at 3-4.] However, courts have chosen to consider *pro se* plaintiff's objections filed after the filing deadline in the past, and this Court will do so here as well. *See, e.g.*,

5

court should grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmovant must then submit evidence of "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted).

I. **Exhaustion of Administrative Remedies**

The R&R recommends dismissing Bevins' federal complaints against the Becker County Defendants because Bevins failed to exhaust his administrative remedies. (R&R at 14–18.) The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[D]ismissal is mandatory" when a plaintiff fails to exhaust his or her available administrative remedies before filing a lawsuit. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

---

*Gustafson v. Reiser*, No. CV 14-3351 (JRT/JJK), 2016 WL 6915299, at *2 (D. Minn. Nov. 23, 2016).

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court defined "available" remedies under the PLRA as those "capable of use." *Id.* at 1858. Administrative remedies are only "unavailable" when: (1) the process is a "dead end," with prison officials "unable or consistently unwilling" to provide relief; (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or (3) prison officials thwart attempts at seeking remedies through "machination, misrepresentation, or intimidation." *Id.* at 1859–60.

The Becker County Grievance Procedure is listed in the Becker County Detention Facility Inmate Handbook. [ECF No. 129 at ¶3.] During Bevins' time at Becker County Jail, the Handbook was made available to all inmates in the facility's dayroom. (*Id.* at ¶6.) The Handbook includes the following grievance procedure:

1. Present your grievance, in writing, to the on-duty Correctional Officer; he/she will attempt to rectify the situation.

2. If you are not satisfied with the Correctional Officer response, direct a written grievance to the Shift Supervisor. If you are not satisfied with this response, ask to have it presented to the Assistant Head Jailer followed by the Jail Administrator.

3. If you are not satisfied with this response, you can send a written grievance to the Sheriff.

[ECF No. 129-1 at 25–26.]

Bevins argues in his Objection to the R&R that he was unable to follow the grievance procedure because his written grievances were destroyed. (Bevins Obj. at 1.) Bevins provides no evidence beyond his own allegations that Becker County Jail destroyed his written grievances. *See Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006) (finding "speculation and conjecture" insufficient to defeat summary judgment). Moreover, even taking his allegations as true, Bevins still failed to show he exhausted his administrative remedies. Bevins argues that "[his] mother called the Sheriff to express concern on how her son was being treated at the Becker County Jail" and that "[t]he Sheriff never followed up on any thing [sic]." (Bevins Obj. at 1–2.) The Jail grievances procedures require the complainant to submit a written grievance to the Sheriff. Having one's mother call the Sheriff to express concern does not satisfy this requirement. And Bevins alleges no additional facts illustrating that his attempts to submit a grievance to the Sheriff were affected by any factors set forth in *Ross*. 136 S. Ct. at 1859–60. Because Bevins failed to exhaust his available administrative remedies, this Court must grant summary judgment to the Becker County Defendants. The action is dismissed with prejudice because Bevins is no longer held in Becker County Jail and is therefore unable to submit any grievances. *See, e.g.*, *Fisherman v. Rasmussen*, Civ. No. 12-2554 (JRT/JSM), 2013 WL 3354509, at *9 (D. Minn. July 3, 2013) (dismissing case with prejudice when remedies were no longer available to inmate).

**II. Federal Claims Against Becker County Defendants**

Bevins also argues in his Objection to the R&R that the Becker County Defendants were deliberately indifferent to his medical needs. (Bevins Obj. at 2.) However, even if Bevins' claims were not barred for failure to exhaust administrative remedies, they would be barred because the Becker County Defendants are entitled to qualified immunity. To prevail on his claims, Bevins must "present sufficient facts to show not only (1) that the officer's conduct violated a constitutional right, but also (2) that the right was clearly established at the time of the alleged violation." *Tatum v. Robinson*, 858 F.3d 544, 547 (8th Cir. 2017) (citation omitted). Under the Eighth Amendment, officers may not be deliberately indifferent to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Whether an official was deliberately indifferent requires both an objective and a subjective analysis." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). A plaintiff must establish under the objective prong "that he suffered from an objectively serious medical need." *Id.* For a medical need to be objectively serious, it "must have been 'diagnosed by a physician as requiring treatment' or must be 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (citation omitted). Then, under the subjective prong, a plaintiff must "show that an official 'actually knew of but deliberately disregarded his serious medical need.'" *Id.* (citation

9

omitted). The Plaintiff must show the officer's mental state was "akin to criminal recklessness." *Id.* (citation omitted).

In his Objection to the R&R, Bevins argues the Jail wrongly determined that he did not need antidepressants. (Bevins Obj. at 2.) However, the Jail contacted Bevins' doctor and inquired about his need for antidepressants and his doctor refused to prescribe Bevins antidepressants at that time. [ECF No. 129-2, at 18.] It would defy logic and the law to conclude that the Becker County Defendants were deliberately indifferent to Bevins' medical needs by refusing to administer a medication for which Bevins had no prescription and indeed, which a doctor refused to prescribe. *See Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) ("Prison officials cannot substitute their judgment for a medical professional's prescription."). Bevins also argues the Jail "has [sic] well documented [r]eputation for deliberate and inhuman indifference to prisoners." (Bevins Obj. at 2.) This Court will not consider this argument because Bevins raised it for the first time in his Objection. *See Hylla v. Transp. Comm. Int'l Union*, 536 F.3d 911, 921–22 (8th Cir. 2008). However, even if this Court were to consider this argument, it would fail because Bevins makes this assertion without providing any evidence.[6] *See Quinn v. St. Louis Cty.*,

---

[6] Bevins cites to another inmate lawsuit against Becker County Jail to support this proposition. (Bevins Obj. at 2.) *See Rusness v. Becker Cty. et al.*, Case No. 18-CV-2256 (JNE/LIB). At the time this order is filed, no dispositive order has been entered in that case, and the mere fact that another inmate has filed a complaint is not evidence creating a genuine issue of material fact at summary judgment.

653 F.3d 745, 752 (8th Cir. 2011) (To survive summary judgment, a plaintiff must "explain the legal significance of [his] factual allegations beyond mere conclusory statements importing the appropriate terms of art."). Therefore, even if Bevins had properly exhausted his administrative remedies, his federal law claims would fail because he put forth no evidence at summary judgment of actions qualifying as deliberate indifference by the Becker County Defendants.

### III. Federal Claims Against St. Mary's Defendants

Bevins also raises several claims against the St. Mary's Defendants in his Objection, including that the Hospital prematurely stopped administering Ativan and that a doctor "told [him] that he would have to learn to live in pain for the rest of his life." (Bevins Obj. at 2–3.) As the R&R states, Bevins' federal claims fail because the Defendants are not state actors. (R&R at 23–25.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Private individuals generally are not considered state actors for § 1983 purposes. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982). Private actors may be considered state actors when "there is 'such a close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch. Ass'n*, 531 U.S. 288, 295 (2001) (citation

omitted). The private actor "must be a 'a willful participant in joint activity with the State' in denying a plaintiff's constitutional rights" and the plaintiff must allege "a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 536 (8th Cir. 2014) (citations omitted).

In determining whether to consider a private actor a state actor, courts must consider the "particular facts of the case." *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007). Whether courts may consider a physician treating a patient on behalf of a jail to be a state actor depends on the particular factual circumstances of this case. In *West v. Atkins*, the Supreme Court held that private physicians acting under contract with the state to provide medical treatment to prisoners are state actors for § 1983 purposes. 487 U.S. at 54–56. As the R&R notes, this case is distinguishable from *West*. (R&R at 24–25.) Unlike the defendants in *West*, there is no evidence that St. Mary's Defendants are under contract to provide care to the inmates at Becker County Jail. [ECF No. 75 at ¶3.]

The R&R correctly notes that this case is more akin to *Griffis v. Medford*, where the defendants "had no contractual relationship with the state, no state doctor referred [the plaintiff] to [the facility], [and] there was no proof of an ongoing relationship between defendants and the jail." No. 05-3040, 2007 WL 2752373, at *6 (W.D. Ark. Sept. 20, 2007). In *Griffis*, the court granted summary judgment to the defendants, holding that "a private physician treating an inmate at a private facility utilizing his independent medical

12

judgment is not answerable to the state and does not act under the color of state law for purposes of § 1983." *Id.* While *Griffis* is not binding on this Court, its reasoning is persuasive—without evidence of a contract, ongoing relationship, or other evidence of state influence, the private physician is likely not considered a "'willful participant in joint activity with the State' in denying a plaintiff's constitutional rights." *Magee*, 747 F.3d at 536 (citation omitted). And like in *Griffis*, in this case there is no contractual relationship between the Jail and the St. Mary's Defendants and Bevins has put forth no facts indicating otherwise, or indicating that the St. Mary's Defendants failed to utilize their independent medical judgment. Bevins has therefore failed to put forth facts at summary judgment showing the St. Mary's Defendants qualified as state actors, and the Court dismisses the federal claims against them.

## IV. State Law Claims

Bevins does not clearly object to the R&R's recommended dismissal of his state law claims for negligence and medical malpractice. To the degree Bevins renews his state law claims in his Objection, those claims do not survive summary judgment for the reasons stated in the R&R. (R&R at 26–28.)[7]

---

[7] This Court has subject matter jurisdiction to consider the state law claims under supplemental jurisdiction. 28 U.S.C. § 1367. When all federal claims in a suit have been dismissed, a district court has discretion to exercise supplemental jurisdiction over the remaining state law claims after weighing several factors, including "judicial efficiency, convenience, and fairness to the litigants." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 221 (8th Cir. 1990). Because the parties have fully litigated the state law claims, the Court

13

Bevins sued the Becker County Defendants for negligence. As the R&R notes, however, public officials are entitled to official immunity under Minnesota law for duties that "require the exercise of discretion or judgment." *Dokman v. Cnty. of Hennepin*, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001). The public official will then only be liable if he or she "commited a willful or malicious wrong." *Elwood v. Rice Cnty.*, 423 N.W.2d 671, 679 (Minn. 1988). Decisions about Bevins' individual medical treatment were discretionary and Bevins provides no evidence that Jail officials acted maliciously in making decisions about his medical treatment.[8]

Bevins also sued the St. Mary's Defendants for medical malpractice. [ECF No. 24.] Under Minnesota law, a plaintiff bringing a medical malpractice claim must include an affidavit, signed by the plaintiff's attorney, stating that the case has been reviewed by an expert who concluded the defendant deviated from the standard of care and, in doing so, caused the plaintiff's injury. Minn. Stat. § 145.682 Subd. 2–3(1). Then, within 180 days of the commencement of discovery, the plaintiff must submit an affidavit identifying their expert witnesses and explaining the underlying facts, substance, and grounds for their

---

will exercise supplemental jurisdiction over the state law claims in the interest of judicial efficiency.

[8] To the extent Bevins makes any arguments that Becker County Defendants were negligent in the administration of their grievance procedures or in the creation of the alleged "well documented reputation for deliberate indifference to prisoners" (Bevins Obj at 2), which may transcend beyond discretionary decisions, Bevins has failed to provide any evidence of any actions taken by Jail officials to substantiate his claims, as discussed previously in this Order.

14

opinions. *Id.* at Subd. 2, 4. The statute provides that if the plaintiff is appearing *pro se*, he or she may sign the affidavit. *Id.* at Subd. 5. If the plaintiff fails to comply with these requirements, the court must dismiss the claims with prejudice unless the plaintiff can establish expert testimony is not necessary to establish negligence. *Id.* at Subd. 6; *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993).

However, this is a case where expert testimony is necessary to establish whether the St. Mary's Defendants were negligent in ceasing treatment and discharging Bevins. This is not like "cases where a sponge or clip is left in the human body, or a burn occurs in a manner that could not have happened in the absence of negligence." *Miller v. Raaen*, 139 N.W.2d 877, 883 (1966). Rather, decisions about treatment dosages and discharge times are matters "beyond the common knowledge of a layman" and require expert testimony. *Id.* The St. Mary's Defendants made a demand for an affidavit of expert review in their Motion to Dismiss. [ECF. No. 35 at 8–9.] Yet, at no point in the litigation has Bevins provided expert testimony. (Bevins Dep. at 177)[9]. Thus, summary judgment is appropriate on the state law medical malpractice claim.

**CONCLUSION**

---

[9] Bevins requested the court appoint an expert [ECF No. 172], but the Court denied the request because his *in forma pauperis* status did not entitle him to affirmative assistance from the Court. [ECF No. 173.]

15

Based on the foregoing and on all the files, records, and proceedings herein, the Court OVERRULES the Bevins' objections [ECF No. 182], and the Report and Recommendation [ECF No. 180] is ACCEPTED. IT IS HEREBY ORDERED THAT:

1. The spelling for Defendant Innovis Health, LLC be corrected for the docket;

2. The St. Mary's Defendant's Motion for Summary Judgment [ECF No. 120] is GRANTED;

3. The Becker County Defendants' Motion for Summary Judgment [ECF No. 126] is GRANTED;

4. Plaintiffs Request for a Subpoena [ECF No. 174] is DENIED; and

5. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 31, 2019　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　s/Nancy E. Brasel
　　　　　　　　　　　　　　　　　　　　　Nancy E. Brasel
　　　　　　　　　　　　　　　　　　　　　United States District Judge